## Commonwealth v. Mangan

*Stephen A. Teller*, District Attorney, for Commonwealth.

*Patrick J. Toole, Jr.*, and *William J. Pearce*, for defendants.

SCHIFFMAN, J., July 2, 1963.—This matter comes before the court on a rule secured by defendants John L. Mangan and Kenneth Carlin upon the District Attor-

ney of Luzerne County to show cause why a change of venue should not be granted in the above captioned cases.

An indictment against Mangan and Carlin was found which charges them together with one Bernard Lynch with conspiracy to do an unlawful act. Another indictment was found which charges the three defendants with the crimes of burglary and larceny.

A separate indictment against Mangan and Carlin was found charging the crimes of robbery by violence, attempt to rob and larceny. A further indictment found against these two defendants charges them with having committed the crimes of robbery while armed, attempted armed robbery and larceny.

The indictments allege the aforementioned offenses occurred on or about February 5, 1963, in the City of Wilkes-Barre, Luzerne County, Pa., against the persons of Max Roth and Rae Roth.

Court-appointed counsel have made application for change of venue in behalf of Mangan and Carlin. Lynch is represented by private counsel and has not joined in the petition.

Procedure before us is pursuant to the Act of March 18, 1875, P. L. 30, sec. 1, 19 PS §551, which provides as follows:

"In criminal prosecutions the venue may be changed, on application of the defendant or defendants, in the following cases: . . .

"Second. When upon the application of a defendant in a felony, it is made to appear to the satisfaction of the court, that from undue excitement against the prisoner, in the county where the offense was committed, a fair trial cannot be had, or that there exists in that county so great a prejudice against him that he cannot obtain a fair trial, or that there is a combination against him instigated by influential persons, by reason of which he cannot obtain a fair trial."

The substance of the application for change of venue is that extraordinary news coverage has caused undue excitement, inflamed public mind, and a violent public prejudice. It is specifically averred these factors, together with the prominence of the Roths, preclude defendants from having a fair and impartial trial in Luzerne County.

The pleadings disclose issues as to the timeliness of the petition; resulting hardship and miscarriage of justice due to multiplicity of trials if the venue is changed; the necessity of all defendants to join in the petition; whether or not the present application in reality seeks a severance which has already been denied.

We conclude that pursuant to Rule 291 of the Local Court Rules of Luzerne County, the instant petition was filed in a proper manner.

The aforementioned Act of March 18, 1875, P. L. 30, sec. 1, 19 PS §551, does not specify time limitation to apply for change of venue. On the contrary, it is allowed when, upon application, it is made to appear to the satisfaction of the court that undue excitement or great prejudice preclude a fair trial.

Our judicial responsibility at all stages of the proceedings requires our constant vigilance that conclusions to be reached will be induced only by the evidence and argument in open court, and not by any outside influence.

We conclude that this petition was under all the existing circumstances filed in a proper and timely manner. Justice requires careful consideration of the issues presented.

We are not persuaded that hardship or injustice resulting from a multiplicity of trials is a legal basis which should warrant a denial of the application. The necessity for fair and impartial trials which motivated the Act of March 18, 1875, P. L. 30 19 PS §551,

obviously was not immune to the realization that a change of venue might result in multiplicity of trials. Yet, upon application of defendant or defendants, the statute specifically enumerates for what causes venue may be changed.

We further conclude that there is no merit to the contention that the petition is defective because the third defendant Lynch did not join therein. The aforementioned pertinent statutory provisions contain no such requirement expressly or by implication. The very language of the statute indicates joinder by all three defendants is not required.

Defendant Lynch is not charged with all of the same offenses as defendant-petitioners Mangan and Carlin. It is evident that Lynch's nonjoinder should not preclude the other defendants from making application to avail themselves of the statutory provisions.

We also determine that a reading of the statute indicates that the existence of certain circumstances warrants a change of venue. The previous determination of severance or other matters pertaining to severance cannot defeat, if warranted, the fundamental right of defendants to receive the statutory protection of the Act of March 18, 1875, P. L. 30, sec. 1, 19 PS §551.

The basic question to be determined is whether or not it is here made to appear to the satisfaction of the court that from undue excitement or so great a prejudice against the defendants, they cannot obtain a fair trial.

The publicity which is alleged to preclude a fair trial refers to front page headlines and other prominent news coverage of the matter in Wilkes-Barre City morning and afternoon daily newspapers.

It is contended that these newspapers reported with extraordinary prominence reference to defendants as

"thugs". It is also alleged that there was conspicuous news publication of defendants' apprehension and arraignment, their prior record including the number of arrests, and merit awards to certain police officers for their work in the apprehension. It is further averred that distinct news coverage emphasized the prominence of the victims, Mr. and Mrs. Roth.

It is stated that the specific matters referred to, together with other references to defendants and the circumstances of the offenses for which they stand charged, received important and sizable news coverage on several occasions since February 5, 1963.

Review of the exhibits presented to the court indicates distinct and conspicuous news coverage in the instant matter. The extent of the publicity and its impact are subjects of our consideration.

We take cognizance that freedom of the press, properly conceived, is basic to our constitutional system.[1] We also recognize that safeguards for the fair administration of criminal justice are likewise protected by the Constitution of the United States.[2] Respect is essential for both of these indispensable elements. Whether or not these rights overlap or are in conflict, must turn on the facts and circumstances of each case.

The courts of this Commonwealth have interpreted the statutory provision in the Act of March 18, 1875, P. L. 30, sec. 1, 19 PS §551, which refers to the "satisfaction of the court" to be "in the court's discretion": Commonwealth v. Green, 396 Pa. 137. Our discretion must determine whether or not under the exist-

---

[1] The First Amendment of the Constitution provides that Congress shall make no law abridging the freedom of speech or of the press.

[2] The Sixth Amendment provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . ."

ing circumstances, defendants are precluded from obtaining a fair trial.

The legislative enactment did not permit a change of venue because of the existence of any excitement or prejudice. This is evidenced by the use of the descriptive words: "undue excitement" or "so great a prejudice." We are unable to ascertain excitement or prejudice of such scope and magnitude in the matter before us.

Assuming arguendo, excitement or prejudice was originally generated, they must be of a strength and consistency to affect the fairness of the impending trial. We observe that in a world charged with tension, yesterday's emotions are frequently crowded out by today's, which in turn may be supplanted by tomorrow's. We do not detect the persistent impact of this news coverage contended by defendants.

We do not determine such prejudicial animosity in the public mind has been shown to exist against defendants. We cannot conclude that the ordinary safeguards available to defendants in the selection of jurors would be ineffective to secure a fair trial within this county. See Commonwealth v. Schurtz, 337 Pa. 405, 410.

This court has previously expressed our Supreme Court's decision that county courts do not possess inherent power to change venue, and that our authority is of statutory origin: Commonwealth v. Renner, 50 Luz. 10.

We conclude that defendant-petitioners have not sustained their burden sufficiently to justify a change of venue in accordance with statutory requirements.

Our interpretation is based on the second paragraph of the Act of March 18, 1875, P. L. 30, sec. 1, 19 PS §551, which we have already detailed and which is the section relied upon by defendants in their application. However, our denial does not foreclose a warranted future evaluation.

The same legislative enactment provides for a change of venue if an unsuccessful effort has been made to procure and empanel a jury and it appears to the court that a fair trial cannot be had.[3] If and when such circumstances subsequently become apparent, our judicial responsibility will be to meet it in an appropriate, forthright manner.

Court-appointed counsel are devoting time and ability toward the defense of their clients without compensation. Equitable and fair consideration conduces toward our conclusion that costs incurred in this defense should be paid by the county.

Accordingly, we make the following

### Order

Now, July 2, 1963, at 10 a.m. (EDT), it is ordered and directed that defendant-petitioners' rule to show cause why a change of venue should not be granted is discharged for the reasons set forth above. Costs incurred in this defense are to be paid by the county.

---

[3] Act of March 18, 1875, P. L. 30, sec. 1, 19 P.S. §551.

In criminal prosecutions the venue may be changed, on application of the defendant or defendants, in the following cases:

Third. When upon trial of any criminal case, an unsuccessful effort has been made to procure and empanel a jury for the trial of the defendant and it shall be made to appear to the court by the written affidavit of some credible witness that a fair trial cannot be had.